# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

LGC USA HOLDINGS, INC.,

　　　　　　　　　　　　Petitioner,

—*against*—

JULIUS KLEIN DIAMONDS, LLC,
JULIUS KLEIN GROUP HOLDINGS, LLC,
JULIUS KLEIN DIAMONDS, INC.,
KLEIN TENANCY,
KLG JEWELRY LLC,
SUNRISE VENTURE LLC,
MARTIN KLEIN,
MOISHE KLEIN,
MALKA KLEIN and
ABRAHAM DAVID KLEIN,

　　　　　　　　　　　　Respondents.



**16 CV 5294**

16 Civ. _____

RECEIVED
JUL 05 2016
CASHIER'S OFFICE
S.D.N.Y.

## AFFIDAVIT OF CHAGIT SOFIEV-LEVIEV

STATE OF NEW YORK　　)
　　　　　　　　　　　　) ss.
COUNTY OF NEW YORK　)

Chagit Sofiev-Leviev, being duly sworn, deposes and says

　　　　1.　　　I am the President of petitioner LGC USA Holdings, Inc. ("LGC"). I submit this affidavit in support of LGC's petition to confirm an arbitration award against the respondents, a copy of which is attached as Exhibit 1.

　　　　2.　　　Except where indicated otherwise, the facts stated in this affidavit are based on my personal knowledge or LGC's business records, and the exhibits are true and correct copies of the originals. I specifically have personal knowledge, and hereby certify, that the arbitral award (Ex. 1), and the underlying agreements to arbitrate (Exs. 2, 5, 10, and 18) are authentic copies of the originals.

## THE PARTIES

3.      LGC is part of a world-renowned diamond business owned by my father, Lev Leviev, a prominent entrepreneur, philanthropist and investor.

4.      The respondents (collectively, the "Kleins") are individuals or companies affiliated with a diamond business controlled by respondent Martin Klein.

## THE DIAMOND JOINT VENTURES

5.      ███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████ JKD holds

valuable rights to buy rough diamonds (referred to in the industry as "sight" rights).  Its primary business is buying rough diamonds, cutting and polishing them, and then re-selling them.

6.      JKD buys and sells diamonds worldwide through (among other companies) its South African affiliate.  (Ex. 6 §§ 4.3.4(b), 4.5(a)(ii); Ex. 7 ¶ 29.)  JKD has factories and offices located internationally, including in New York, Israel, Hong Kong, South Africa, and Namibia.  (Ex. 7 ¶ 29; Ex. 8, at JDK000262.)

7.      ███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████

8.      Mr. Leviev and the Klein family entered a second joint venture called Sunrise Venture LLC ("Sunrise") that engages in substantially the same business as JKD. LGC is a direct owner of Sunrise.  (Ex. 9.)

9.      In or about January 2007, Mr. Leviev and the Klein family decided to expand their joint business operations by forming a third company, KLG Jewelry LLC ("KLG"), to operate high-end retail stores.  (Ex. 10 (KLG Operating Agreement).)  KLG opened and operated stores throughout the world, including in New York, the United Kingdom, and Russia.  (Ex. 7 § 33; Ex. 11, at JKD000008.)  KLG made tens of millions in diamond sales in (among other countries) the United Kingdom, the United Arab Emirates, Singapore, and Russia.  (*Id*.)  KLG's inventory came primarily from JKD and Sunrise.

10.     The KLG stores marketed their merchandise under the trademark "Leviev" via a license from LGC.  (Ex. 12.)  The Trademark License Agreement covers the European Union and 18 other countries.  (*Id*., at Schedule A.)

**LGC's Buyout Rights**

11.     LGC has an absolute contractual right to be bought out from the joint ventures.  (Ex. 2 §§ 2.2.1, 2.4;; Ex. 4 § 8.3; Ex. 7 ¶¶ 3, 46-47.)  To simplify the process, the parties agreed in a 2004 Letter Agreement to establish a valuation each year that would be "the basis for determining the buyout" price.  (Ex. 13 § 1.)  If the parties could not agree on a buyout price, they would use "the most recent valuation" that had been established.  (*Id*.; *see also* Ex. 7 ¶¶ 3, 46-47 (Klein affirmation explaining buyout process).)

12.    In October 2012, LGC decided to end its business relationship with the Kleins, and invoked its buyout rights.  The Kleins refused to cooperate, however, and did not pay LGC anything.

13.    LGC was forced to initiate arbitration in May 2013.  (Ex. 14 (initial Statement of Claim); *see also* Exs. 15-17 (final arbitration pleadings).)

## THE PARTIES' ARBITRATION OBLIGATIONS

14.    The Rights Agreement, Second Amended JKD Operating Agreement, and KLG Operating Agreement each contain a substantially identical arbitration clause stating: "Any controversy or claim arising out of or relating to this Agreement, the breach, termination or validity thereof or the engagement pursuant hereto, which cannot be resolved between the parties shall be settled by arbitration."  (Ex. 2 § 8.8; Ex. 5 § 11.11; Ex. 10 § 11.14.)

15.    In any arbitration, each side would choose an arbitrator with "substantial experience in the diamond industry," and those two arbitrators would choose a third.  (*Id.*) The three arbitrators were to resolve any disputes "pursuant to such rules as determined by a majority" of the panel.  (*Id.*)

16.    The Sunrise Operating Agreement does not contain an arbitration clause, but the parties agreed, via an exchange of letters, to include disputes over Sunrise in the arbitration on the same terms.  (Ex. 18.)  The Kleins' counterclaims confirm that Sunrise is properly included.  (Ex. 16 ¶ 13 (agreeing that "disputes between the parties relating to the JK Companies [defined to include Sunrise] are subject to arbitration").)

## SELECTION OF THE ARBITRATION PANEL

17. ████████████████████████████████████████████)
████████████████████████████████████████████████)
████████████████████████████████████████)

18. ████████████████████████████████████)
████████████████████████████████████████████████)
████████████████████████████████████████████████)
████████████████████████████████████████████████)
████████)

19. ████████████████████████████████████████████)
████████████)

20. ████████████████████████████████████████)
████████████████████)

## LGC's COURT APPLICATION FOR EMERGENCY RELIEF

21. ████████████████████████████████████████████)
████████████████████████████████████████████████)
████████████████████████████████)

22. ████████████████████████████████████████)
████████████████████████████████████████████████)
████████████████████████████████████████████)
████████████████████████████)

23. ████████████████████████████████████████████)
████████████████████████████████████████████)
████████████████████████████████████)

-5-

**LGC's Motion to Arbitrators for Interim and Injunctive Relief**

24. ████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████)

25. ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████)

26. ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████)

27. ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

**LGC's Petition to Confirm the Interim Relief**

28. ████████████████████████████████████████████████

████████████████████████████████████)

29. ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████



30.

31.

<u>**THE KLEINS' ONGOING CAMPAIGN AGAINST MR. ZAHAVI AND MR. BRONNER**</u>

32.     In December 2015, respondent Malka Klein filed a Summons With Notice in New York state court naming (among others) my father, Mr. Zahavi, Mr. Bronner and me personally as defendants, and accused us all of RICO offenses arising from the arbitration, including fraud, money laundering and extortion.  (Ex. 37.)

33.     Even though the complaint was not available to the public online, an article promptly appeared in the press in Israel (one of the places in which my father has business interests) about the lawsuit — obviously planted by the Kleins.  The article falsely stated that my father faced investigation by U.S. criminal authorities as a result of the lawsuit. Eliminating any doubt about the source of the article, Mr. Pluczenick (the arbitrator

appointed by the Kleins) called Mr. Bronner and Mr. Zahavi and told them that there would be more press about the suit if they did not resign as arbitrators. (Ex. 38.)

34.     At around the same time, Mr. Bronner received anonymous calls threatening that he and his family would be killed or harmed if he did not resign from the arbitration. (Ex. 22 ¶ 3.b.) Mr. Bronner also received an "injunction" from a rabbinical court (called a "Beit Din") in a case initiated by a member of the Klein family. (*Id*. ¶ 3.c.) The injunction stated that he should not "continue with the hearings" or "issue any directive and ruling" in the case until the Beit Din authorized him to do so. (*Id*.)

35.     In the midst of this onslaught, the Kleins filed a motion asking Mr. Bronner to resign based on allegedly undisclosed ties to Mr. Zahavi. (Ex. 39.) The motion was abusive and frivolous, especially because Mr. Bronner had disclosed from the outset that he had business ties to Mr. Zahavi. (Ex. 20; Ex. 40.) The panel swiftly denied the motion and wrote that the Kleins' actions were an "unprecedented an[d] improper attempt to interfere with the performance by a duly appointed arbitrator." (Ex. 22 ¶ 3.d.) Having failed to bully Mr. Bronner into resigning, the Kleins promptly dropped their frivolous RICO case. (Ex. 41.)

**THE ARBITRATION HEARING**

36.     The arbitration hearing took place over seven days between February 15 and 25, 2016, at the Leonardo City Tower Hotel in Ramat Gan, Israel with testimony from eight witnesses, and with hundreds of exhibits entered into evidence. The parties thereafter each submitted detailed post-hearing briefs. (Ex. 42 (LGC); Ex. 43 (Kleins).)

## BELGIUM CRIMINAL PROCEEDINGS AGAINST ARBITRATOR JACOB BRONNER

37.     In May 2016, after the hearing but before an award was issued, the neutral arbitrator, Jacob Bronner, was convicted of tax-related crimes in Belgium.  (Ex. 44.)[1]  In short, a company called Monstrey Worldwide Services established a system for diamond traders to evade taxes, and Mr. Bronner was among approximately 100 defendants convicted of avoiding taxes via that system.  (*Id*.)  Mr. Bronner did not receive a prison sentence.  (*Id*.)

38.     The case was covered widely in the press both before and after the convictions were announced.  (Ex. 45, Ex. 46.)  The judgment of conviction makes no mention of the parties to this case, and there is no factual overlap whatsoever between the Belgian case and this one.

39.     ███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

## THE ARBITRATION AWARD

40.     On June 30, 2016, the panel issued its award.  (Ex. 1.) ██████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

---

[1] The judgment is over 700 pages and in the Flemish language.  Exhibit 44 is a translated excerpt provided to the parties by counsel for the arbitration panel.

_____
Chagit Sofiev-Leviev

Sworn to before me this
30 day of June 2016

_____
Notary Public

CHARLES A MICHAEL
Notary Public, State of New York
No. 02MI6283771
Qualified in King County
Commission Expires June 17, 2017