JUDGE FURMAN

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

LGC USA HOLDINGS, INC.,

                        Petitioner,

—*against*—

JULIUS KLEIN DIAMONDS, LLC,
JULIUS KLEIN GROUP HOLDINGS, LLC,
JULIUS KLEIN DIAMONDS, INC.,
KLEIN TENANCY,
KLG JEWELRY LLC,
SUNRISE VENTURE LLC,
MARTIN KLEIN,
MOISHE KLEIN,
MALKA KLEIN and
ABRAHAM DAVID KLEIN,

                        Respondents.

**16 CV 5294**

16 Civ. _____



RECEIVED
JUL 05 2016
CASHIER'S OFFICE
S.D.N.Y.

**LGC USA Holdings, Inc.'s Memorandum of Law in Support of Its Petition to Confirm a Foreign Arbitration Award**

Steptoe & Johnson LLP
1114 Avenue of the Americas
New York, New York 10036
(212) 506-3900

*Counsel for LGC USA Holdings, Inc.*

June 30, 2016

### TABLE OF CONTENTS

INTRODUCTION .................................................................................................... 1

BACKGROUND ..................................................................................................... 2

    The Parties and the Diamond Joint Ventures.................................................... 2

    LGC's Buyout Rights ...................................................................................... 4

    The Parties' Arbitration Obligations................................................................ 5

    Selection of the Arbitration Panel.................................................................... 5

    LGC's Court Application for Emergency Relief .............................................. 6

    LGC's Motion to Arbitrators for Interim and Injunctive Relief ...................... 6

    LGC's Petition to Confirm the Interim Relief ................................................. 7

    The Kleins' Ongoing Campaign Against Two of the Arbitrators...................... 8

    The Arbitration Hearing.................................................................................. 9

    In An Unrelated Proceeding in Belgium,
    Arbitrator Jacob Bronner is Found to Have Avoided Taxes.............................. 9

    The Arbitration Award.................................................................................... 10

ARGUMENT .......................................................................................................... 10

    I.        The New York Convention Governs LGC's Award............................................ 10

    II.       Confirmation Is Required Absent Proof of One of the
            Specified Grounds in the New York Convention to Set Aside an Award ........... 12

    III.     The Kleins Cannot Prove Any Ground to Set Aside the Award......................... 14

          A.     The Award Falls Within the Broad Scope of the Arbitration Clauses...... 14

          B.     Mr. Bronner's Unrelated Belgian Case
               Cannot Justify Denying Enforcement ...................................................... 15

          C.     The Alleged Partiality of the Arbitrators
               Cannot Justify Denying Enforcement...................................................... 17

CONCLUSION........................................................................................................ 19

<u>TABLE OF AUTHORITIES</u>

### CASES

*AAOT Foreign Econ. Ass'n (VO) Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*,
139 F.3d 980 (2d Cir. 1998)................................................................................ 17

*Arbitration between Overseas Cosmos, Inc. & NR Vessel Corp.*,
97 Civ. 5898, 1997 WL 757041 (S.D.N.Y. Dec. 8, 1997)................................. 12

*Baker Marine (Nig.) Ltd. v. Chevron (Nig.) Ltd.*,
191 F.3d 194 (2d Cir. 1999)................................................................................ 10

*Bergesen v. Joseph Muller Corp.*,
710 F.2d 928 (2d Cir. 1983)................................................................................ 11

*Brandeis Intsel v. Calabrian*,
656 F. Supp. 160 (S.D.N.Y. 1987)..................................................................... 19

*C.T. Shipping, Ltd. v. DMI (U.S.A.) Ltd.*,
774 F. Supp. 146 (S.D.N.Y. 1991)..................................................................... 17

*China Nat. Metal Products Imp./Exp. Co. v. Apex Digital, Inc.*,
379 F.3d 796 (9th Cir. 2004) ............................................................................. 13

*Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*,
156 F.3d 310 (2d Cir. 1998)............................................................................... 13

*HBC Sols., Inc. v. Harris Corp.*, No. 13 Civ. 6327,
2014 WL 3585503 (S.D.N.Y. July 18, 2014) .................................................... 12

*Heather Trading Corp. v. Voest-Alpine Trading U.S.A. Corp.*,
No. 85 Civ. 823, 1986 WL 4542 (S.D.N.Y. Apr. 8, 1986)................................. 12

*Holzer v. Mondadori*,
No. 12 Civ. 5234, 2013 WL 1104269 (S.D.N.Y. Mar. 14, 2013) ..................... 12

*Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*,
141 F.3d 1434 (11th Cir. 1998) ......................................................................... 11

*Int'l Standard Elec. Corp. v. Bridas Sociedad Anonima Petrolera, Indus. Y Comercial*,
745 F. Supp. 172 (S.D.N.Y. 1990)..................................................................... 14

*Knickerbocker Textile Corp. v. Leifer Mfg. Corp.*,
278 A.D. 351 (1st Dep't 1951) ........................................................................... 16

*Lagstein v. Certain Underwriters at Lloyd's, London*,
607 F.3d 634 (9th Cir. 2010) ............................................................................. 16

*New Avex, Inc. v. Socata Aircraft Inc.*,
    No. 02 Civ. 6519, 2002 WL 1998193 (S.D.N.Y. Aug. 29, 2002) ................................... 12

*Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier*,
    508 F.2d 969 (2d Cir. 1974) .................................................................................... 12

*Telenor Mobile Commc'ns AS v. Storm LLC*,
    524 F. Supp. 2d 332 (S.D.N.Y. 2007), *aff'd*, 584 F.3d 396 (2d Cir. 2009) .................... 15

*Thai-Lao Lignite (Thailand) Co. v. Gov't of the Lao People's Democratic Republic*,
    No. 10 Civ. 5256, 2011 WL 3516154 (S.D.N.Y. Aug. 3, 2011),
    *aff'd*, 492 F. App'x 150 (2d Cir. 2012) .......................................................................... 15

*Transmarine Seaways Corp. of Monrovia v. Marc Rich & Co. A. G.*,
    480 F. Supp. 352 (S.D.N.Y. 1979) .............................................................................. 18

*U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*,
    241 F.3d 135 (2d Cir. 2001) .................................................................................... 11

*United Transp. Union v. Gateway W. Ry. Co.*,
    284 F.3d 710 (7th Cir. 2002) .................................................................................... 16

*Velez Organization v. J.C. Contracting Corp.*,
    289 A.D.2d 105 (1st Dep't 2001) .............................................................................. 17

*Waterside Ocean Nav. Co. v. Int'l Nav. Ltd.*,
    737 F.2d 150 (2d Cir. 1984) .................................................................................... 18

*Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*,
    126 F.3d 15 (2d Cir. 1997) .......................................................................... 13, 16, 17

## STATUTES

9 U.S.C. § 201 ........................................................................................................ 12

9 U.S.C. § 202 ........................................................................................................ 11

9 U.S.C. § 207 ........................................................................................................ 12

## TREATISES

A. van den Berg, The New York Arbitration Convention of 1958 (Kluwer 1981) ............... 14, 18

## OTHER AUTHORITIES

Convention on the Recognition and Enforcement of Foreign Arbitral Awards,
    June 10, 1958, 21 U.S.T. 2517, 33 U.N.T.S. 38 ............................................................ 1

## INTRODUCTION

Petitioner LGC USA Holdings, Inc. ("LGC") respectfully submits this memorandum in support of its motion to confirm an international arbitration award in its favor against the respondents (collectively, the "Kleins") for $111,854,210 (which, with interest from 2014, is approximately $144 million today) and for certain other declaratory and injunctive relief.

LGC and the Kleins are both in the international diamond business, and, between 2002 and 2007, they joined forces in three joint ventures.  The parties agreed that LGC could elect to be bought out of the joint ventures and be paid for its share under a specified contractual formula.  They also agreed that "any controversy or claim arising out of or relating to" the joint ventures would be resolved by arbitration.

In October 2012, LGC exercised its buyout options, but the Kleins refused to pay.  Thus, in May 2013, LGC initiated an arbitration against the Kleins to resolve the dispute over the buyout option and purchase price.  The arbitration involved (among other proceedings) a week-long fully contested merits hearing in Israel.  On June 30, 2016, a three member arbitral panel issued a final award in LGC's favor.

LGC now seeks confirmation of the award under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 33 U.N.T.S. 38 (the "New York Convention," codified at 9 U.S.C. §§ 201-208).  Under the New York Convention, an arbitral award must be confirmed unless the respondents can prove one of seven specified grounds to set aside the award.  The Kleins have in their arbitration filings previewed various challenges to confirmation.  None is among the seven grounds in the New York Convention, and each is meritless.

First, the Kleins have suggested that the arbitrators would be acting outside the scope of the arbitration agreement by ruling in LGC's favor, but that argument is in reality an attempt to

improperly re-litigate the merits — a tactic courts routinely reject.  Here, the applicable arbitration clauses cover "[a]ny controversy or claim arising out of or relating to" the underlying contracts, and thus easily encompass the matters the panel decided.

Second, the Kleins have complained about the fact that one of the arbitrators, Jacob Bronner, was recently convicted of tax-related crimes in Belgium.  But the charges have nothing to do with this case.  Courts consistently conclude that arbitrators' unrelated criminal convictions are not grounds to set aside an arbitral award.

Third, the Kleins have complained about supposedly undisclosed ties between the arbitrator selected by LGC (Israel Zahavi) and the neutral arbitrator (Jacob Bronner), who was chosen by Mr. Zahavi and the arbitrator the Kleins selected.  The Kleins waived these complaints because Mr. Bronner disclosed in 2013 that he did business with Mr. Zahavi (and disclosed also that he did business with the arbitrator chosen by the Kleins).  The Kleins chose not to inquire further about the details.  They only started to question Mr. Bronner after the panel began ruling against them on the merits.  In any event, the alleged ties cannot justify setting aside the award because ties between arbitrators (as opposed to between an arbitrator and a party) are insufficient as a general matter and especially on the thin evidence the Kleins have presented.

The Court should confirm the award.

**BACKGROUND**

## THE PARTIES AND THE DIAMOND JOINT VENTURES

LGC is part of a world-renowned diamond business owned by Lev Leviev, a prominent entrepreneur, philanthropist and investor.  (Leviev Aff. ¶ 3.)  The respondents are individuals or companies affiliated with a diamond business controlled by respondent Martin Klein.  (*Id*. ¶ 4.)

In 2002, LGC and the Klein family decided to join forces in the diamond industry.  They ultimately entered into three joint ventures:  (1) Julius Klein Diamonds, LLC ("JKD"); (2) Sunrise Venture LLC ("Sunrise"); and (3) KLG Jewelry LLC ("KLG").  (*Id.* ¶¶ 5-9.)

The first joint venture, JKD, was originally controlled solely by the Kleins.  (*Id.* ¶ 5.)  In January 2003, LGC and the Kleins entered into a contract referred to as the "Rights Agreement" under which a Leviev company (now LGC) contributed tens of millions of dollars to the Kleins in exchange for substantially all of the rights associated with the Kleins' Class A membership interests in JKD.  (*See* Ex. 2 (Rights Agreement); Ex. 3 (Amendment to Rights Agreement); Ex. 4 (Amended JKD Operating Agreement); Ex. 5 (Second Amended JKD Operating Agreement).)[1] At the Kleins' insistence, the Class A membership interests in JKD were not formally transferred to LGC under the Rights Agreement.  (Leviev Aff. ¶ 7.)  They remained nominally with the "Klein Tenancy," which refers to the four individual respondents (Martin Klein, Moishe Klein, Malka Klein and Abraham David Klein) who hold their interest in JKD as joint tenants with a right of survivorship.  (*Id.*)

JKD's primary business is buying rough diamonds, cutting and polishing them, and then re-selling them worldwide through (among other companies) its South African affiliate.  (*Id.* ¶ 6; Ex. 6 §§ 4.3.4(b), 4.5(a)(ii); Ex. 7 ¶ 29.)  JKD holds valuable rights to buy rough diamonds (referred to in the industry as "sight" rights).  (Leviev Aff. ¶ 5.)  JKD has factories and offices located internationally, including in New York, Israel, Hong Kong, South Africa, and Namibia. (Ex. 7 ¶ 29; Ex. 8, at JDK000262.)

---

[1] Citations in the form "Ex. ___" refer to the exhibits attached to the accompanying affidavit of Chagit Sofiev-Leviev.

The second joint venture, Sunrise, engages in substantially the same business as JKD. LGC is a direct owner of Sunrise.  (Leviev Aff. ¶ 8; Ex. 9.)

In or about January 2007, Mr. Leviev and the Klein family decided to expand their joint business operations by forming a third company — KLG — to operate high-end retail stores. (Leviev Aff. ¶ 9; Ex. 10 (KLG Operating Agreement).)  KLG opened and operated stores throughout the world, including in New York, the United Kingdom, and Russia.  (Ex. 7 § 33; Ex. 11, at JKD000008.)  KLG made tens of millions in diamond sales in (among other countries) the United Kingdom, the United Arab Emirates, Singapore, and Russia.  (*Id.*)  KLG's inventory came primarily from JKD and Sunrise.  (Leviev Aff. ¶ 9.)

The KLG stores marketed their merchandise under the trademark "Leviev" via a license from LGC.  (Ex. 12.)  The Trademark License Agreement covers the European Union and 18 other countries.  (*Id.*, Schedule A.)

**LGC'S BUYOUT RIGHTS**

LGC has an absolute contractual right to be bought out from the joint ventures. (Ex. 2 §§ 2.2.1, 2.4; Ex. 4 § 8.3; Ex. 7 ¶¶ 3, 46-47.)  To simplify the process, the parties agreed in a 2004 Letter Agreement to establish a valuation each year that would be "the basis for determining the buyout" price.  (Ex. 13 § 1.)  If the parties could not agree on a buyout price, they would use "the most recent valuation" that had been established.  (*Id.*; *see also* Ex. 7 ¶¶ 3, 46-47 (Klein affirmation explaining buyout process).)

In October 2012, LGC invoked its buyout rights.  (Leviev Aff. ¶ 12.)  The Kleins refused to cooperate and did not buy out LGC's interests.  (*Id.*)  LGC was forced to initiate arbitration in May 2013.  (Ex. 14 (initial Statement of Claim); *see also* Exs. 15-17 (final arbitration pleadings).)

## THE PARTIES' ARBITRATION OBLIGATIONS

The Rights Agreement, Second Amended JKD Operating Agreement, and KLG Operating Agreement each contain a substantially identical arbitration clause stating: "Any controversy or claim arising out of or relating to this Agreement, the breach, termination or validity thereof or the engagement pursuant hereto, which cannot be resolved between the parties shall be settled by arbitration." (Ex. 2 § 8.8; Ex. 5 § 11.11; Ex. 10 § 11.14.)  In any arbitration, each side would choose an arbitrator with "substantial experience in the diamond industry," and those two arbitrators would choose a third. (*Id*.)  The three arbitrators were to resolve any disputes "pursuant to such rules as determined by a majority" of the panel. (*Id*.)

The Sunrise Operating Agreement does not contain an arbitration clause, but the parties agreed, via an exchange of letters, to include disputes over Sunrise in the arbitration on the same terms. (Ex. 18.)  The Kleins' counterclaims confirm that Sunrise is properly included. (Ex. 16 ¶ 13 (agreeing that "disputes between the parties relating to the JK Companies [defined to include Sunrise] are subject to arbitration").)

## SELECTION OF THE ARBITRATION PANEL

LGC selected Israel Zahavi as an arbitrator, and the Kleins chose Chaim Pluczenick. (Ex. 19 ¶ 1.)  Those two, in turn, chose Jacob Bronner as the third arbitrator. (*Id*.)  All three are deeply experienced and well-known in the diamond industry. (Leviev Aff. ¶ 17.)

In September 2013, Mr. Bronner issued a disclosure document stating (among other things), "I have done business with Zahavi and Pluczenick and will continue to do so." (Ex. 20.)  The Kleins did not ask him to elaborate at the time, and, in fact, issued indemnities and releases in favor of all the arbitrators that acknowledged their appointments. (Ex. 21.)  Mr. Pluczenick was later replaced by Eytan Cohen, a diamantaire based in Israel. (Ex. 22 ¶ 1.)

The arbitration panel ruled that the arbitration hearing would take place in Israel.  (Ex. 23 ¶ 2; Ex. 24.)

## LGC'S COURT APPLICATION FOR EMERGENCY RELIEF

In the year following LGC's election to exit the business, the Kleins not only refused to pay LGC the substantial sums owed, but completely shut LGC out from the business, and denied it access to books and records.  (Leviev Aff. ¶ 21.)  Accordingly, in September 2013, LGC filed a petition in New York state court seeking emergency relief in aid of arbitration, including an order (i) ensuring the joint ventures would operate only in the ordinary course, and (ii) directing that KLG give LGC access to books and records.  (Ex. 25.)

The trial court denied the petition, finding that the case was "simply about money," not matters warranting an injunction, and that any request for books and records "should be addressed to the arbitration Tribunal."  (Ex. 26.)

## LGC'S MOTION TO ARBITRATORS FOR INTERIM AND INJUNCTIVE RELIEF

In November 2013, LGC made a motion to the arbitration panel for interim and injunctive relief, including (i) access to books and records, (ii) a prohibition on the Kleins operating the business outside the ordinary course, and (iii) an interim award of the minimum that would be due for its JKD redemption, $105.9 million (plus interest).  (Ex. 27.)

On December 5, 2013, the panel issued an order granting the relief in substantial part, and (among other things) ordered the Kleins to pay LGC approximately $102 million.  (Ex. 28.)

The next day, the panel stayed its prior order so that the parties could pursue a global settlement.  (Ex. 29.)  The stay order stated that, if any party notified the panel that settlement talks had failed, the injunctive relief in the first order would "automatically and immediately enter into full force and effect."  (*Id*.)  While the order was stayed, the Kleins paid approximately $67 million to LGC as a partial redemption of its interests.  (Leviev Aff. ¶ 26.)

In November 2014, the panel issued a third order, stating that it had received notice that the settlement talks had failed, and formally reinstated the first order.  (Ex. 30.)  The November 2014 order stated it could "be enforced anywhere in the world."  (*Id.* ¶ 15.)

**LGC'S PETITION TO CONFIRM THE INTERIM RELIEF**

In December 2014, LGC returned to the same state court judge, and moved to confirm the relief the arbitrators ordered.  (Ex. 31.)

The Kleins opposed the motion and, apparently realizing that they could not win the case on its merits, began what would become a scorched earth campaign to attack and undermine the arbitrators.  (Leviev Aff. ¶ 29.)  Specifically, they filed a cross-motion seeking to remove Mr. Zahavi and Mr. Bronner on the ground that they allegedly tried to use their rulings to extort a settlement from the Kleins, and that Mr. Bronner allegedly failed to fully disclose his ties to Mr. Leviev.  (Ex. 32 at 38-47.)

LGC opposed the cross-motion (Ex. 33), supported by affidavits from Mr. Zahavi and Mr. Bronner explaining that they authorized the orders based on their careful consideration of the merits, not for any improper purpose.  (Ex. 34  ¶¶ 9-47 (Zahavi); Ex. 35 ¶¶ 34-52 (Bronner).)  Mr. Bronner also explained that the allegations about his allegedly hidden ties to Mr. Leviev were completely unfounded.  (Ex. 35 ¶¶ 18-33.)

In September 2015, the trial court denied both the petition to confirm and the cross-motion to disqualify as premature, because the arbitration had not concluded.  (Ex. 36.)  The court nonetheless added:  "Even if the court were to entertain the cross-motion seeking disqualification, the request would be denied because all objections were waived when respondent proceeded without objection long after it had knowledge of the alleged irregularities."  (*Id.*)

### THE KLEINS' ONGOING CAMPAIGN AGAINST TWO OF THE ARBITRATORS

The Kleins thereafter continued their campaign to delay the award and lay the groundwork for any challenge to enforcement.  These efforts included, among other things, meritless court filings, promoting unfounded stories in the press, and threatening two of the arbitrators with legal actions.

In December 2015, respondent Malka Klein filed a Summons With Notice in New York state court naming (among others) Lev Leviev, his daughter, Mr. Zahavi and Mr. Bronner personally as defendants, and accused them all of RICO offenses arising from the arbitration, including fraud, money laundering and extortion.  (Ex. 37.)  Even though the complaint was not available to the public online, an article promptly appeared in the press in Israel (one of the places in which Mr. Leviev has business interests) about the lawsuit — obviously planted by the Kleins.  (Leviev Aff. ¶ 33.)  The article falsely stated that Mr. Leviev faced investigation by U.S. criminal authorities as a result of the lawsuit.  (*Id*.)  Eliminating any doubt about the source of the article, Mr. Pluczenick (the arbitrator appointed by the Kleins) called Mr. Bronner and Mr. Zahavi and told them that there would be more press about the suit if they did not resign as arbitrators.  (Ex. 38.)

At around the same time, Mr. Bronner received anonymous calls threatening that he and his family would be killed or harmed if he did not resign from the arbitration.  (Ex. 22 ¶ 3.b.)  Mr. Bronner also received an "injunction" from a rabbinical court (called a "Beit Din") in a case initiated by a member of the Klein family.  (*Id*. ¶ 3.c.)  The injunction stated that he should not "continue with the hearings" or "issue any directive and ruling" in the case until the Beit Din authorized him to do so.  (*Id*.)

In the midst of this onslaught, the Kleins filed a motion asking Mr. Bronner to resign based on allegedly undisclosed ties to Mr. Zahavi.  (Ex. 39.)  The motion was abusive and

frivolous, especially because Mr. Bronner had disclosed from the outset that he had business ties to Mr. Zahavi.  (Ex. 20; Ex. 40.)  The panel swiftly denied the motion and wrote that the Kleins' actions were an "unprecedented an[d] improper attempt to interfere with the performance by a duly appointed arbitrator."  (Ex. 22 ¶ 3.d.)  Having failed to bully Mr. Bronner into resigning, the Kleins promptly dropped their frivolous RICO case.  (Ex. 41.)

**THE ARBITRATION HEARING**

The arbitration hearing took place over seven days between February 15 and 25, 2016, at the Leonardo City Tower Hotel in Ramat Gan, Israel with testimony from eight witnesses, and with hundreds of exhibits entered into evidence.  (Leviev Aff. ¶ 36.)  The parties thereafter each submitted detailed post-hearing briefs.  (Ex. 42 (LGC); Ex. 43 (Kleins).)

**IN AN UNRELATED PROCEEDING IN BELGIUM,**
**ARBITRATOR JACOB BRONNER IS FOUND TO HAVE AVOIDED TAXES**

In May 2016, Mr. Bronner was involved in an unrelated legal proceeding in Belgium that has no connection whatsoever with the arbitration or the parties.  The proceeding occurred after the arbitration hearing but before an award was issued.  Mr. Bronner — along with approximately 100 other defendants — was convicted of avoiding taxes in Belgium.  (Ex. 44.)[2] In short, a company called Monstrey Worldwide Services established a system for diamond traders to evade taxes, and Mr. Bronner was among approximately 100 defendants convicted of avoiding taxes via that system.  (*Id.*)  Mr. Bronner did not receive a prison sentence.  (*Id.*)

The case was covered widely in the press both before and after the convictions were announced.  (Ex. 45, Ex. 46.)  The judgment of conviction makes no mention of the parties to this case, and there is no factual overlap whatsoever between the Belgian case and this one.

---

[2] The judgment is over 700 pages and in the Flemish language.  The exhibit referenced is a translated excerpt from counsel for the arbitration panel.  (Leviev Aff. ¶ 37 n.1.)

In response to a query from the arbitration panel, LGC explained that the conviction should have no effect on the arbitration panel's work.  (Ex. 47.)  The Kleins disagreed (Ex. 48), but the panel ultimately agreed with LGC that its work should continue.

## THE ARBITRATION AWARD

On June 30, 2016, the panel issued its award.  (Ex. 1)  The panel found that the Kleins breached the joint venture agreements, and awarded LGC $111,854,210, plus prejudgment interest of 9% per year dating back to February 15, 2014.  (*Id*. at 3.)  The panel ruled that "each and all of the Respondents are liable jointly and severally to [LGC] to pay" such amounts within 30 days of the date of the award.  (*Id.*)  The panel also awarded LGC certain declaratory relief (including that it would not be responsible for joint venture liabilities), and injunctive relief regarding the trademark.  (*Id*. at 2.)

## ARGUMENT

## I.     THE NEW YORK CONVENTION GOVERNS LGC'S AWARD

The New York Convention provides for federal court "recognition and enforcement" of two types of arbitral awards: (i) "arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought," and (ii) "arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought." *See* New York Convention, art. I § 1.  Both categories apply to this award.

First, the arbitration hearing took place and the award was made in Israel, and LGC is seeking to enforce it in the United States.  The plain language of the New York Convention covers precisely this scenario.  *See id.*  The Second Circuit has recognized that the New York Convention applies in these circumstances.  *See Baker Marine (Nig.) Ltd. v. Chevron (Nig.) Ltd*., 191 F.3d 194, 196 (2d Cir. 1999) ("This dispute falls under the Convention because Baker

Marine is seeking enforcement of arbitration awards in a nation other than the nation where the awards were made.").[3]

Second, the award stems from a commercial relationship between United States citizens that is not "considered domestic" under U.S. law — specifically because it "involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states." 9 U.S.C. § 202 (defining the non-domestic standard). The Second Circuit has interpreted this language to mean that an award falls within the New York Convention so long as the dispute "is not entirely domestic in scope." *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co*., 241 F.3d 135, 146 (2d Cir. 2001).

The relationship between LGC and the Kleins centers on three joint ventures engaged in the international diamond trade. Martin Klein himself has stated under oath that JKD has "factories and offices all over the globe" and that KLG had "boutiques in several cities around the world, including New York, London, Dubai and Singapore." (Ex. 7 ¶¶ 29, 33.) A disclosure schedule to one of the agreements between LGC and the Kleins specifically acknowledges that JKD buys and sells diamonds through (among other companies) its South African affiliate. (Ex. 6 §§ 4.3.4(b), 4.5(a)(ii).) In addition, during the arbitration the Kleins alleged a breach of a Trademark License Agreement for the "Leviev" trademark through alleged sales of the licensed marks in London and Russia. (Ex. 16 ¶¶ 184-90.) The Trademark License Agreement itself covers the European Union and 18 other countries. (Ex. 12 Schedule A.)

---

[3] *See also Bergesen v. Joseph Muller Corp.*, 710 F.2d 928, 931 (2d Cir. 1983) ("[T]he first paragraph of Article I [of the Convention] means that the Convention applies to all arbitral awards rendered in a country other than the state of enforcement, whether or not such awards may be regarded as domestic in that state."); *Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1440 (11th Cir. 1998) ("The Convention by its terms applies to . . . awards made in a country other than that in which enforcement of the award is sought").

Courts have found disputes involving similar (or lesser) levels of international ties to fall within the New York Convention.  *See, e.g.*, *HBC Sols., Inc. v. Harris Corp.*, No. 13 Civ. 6327, 2014 WL 3585503, at *3 (S.D.N.Y. July 18, 2014) (sale of business division with "global operations"); *Holzer v. Mondadori*, No. 12 Civ. 5234, 2013 WL 1104269, at *5 (S.D.N.Y. Mar. 14, 2013) (sale of "property located in Dubai"); *New Avex, Inc. v. Socata Aircraft Inc.*, No. 2 Civ. 6519, 2002 WL 1998193, at *2-3 (S.D.N.Y. Aug. 29, 2002) (contract to market and sell airplanes made in France within certain U.S. states); *Heather Trading Corp. v. Voest-Alpine Trading U.S.A. Corp.*, No. 85 Civ. 823, 1986 WL 4542, at *1-2 (S.D.N.Y. Apr. 8, 1986) (delivery of oil to Ecuador).  Thus, the New York Convention governs here.

## II.  CONFIRMATION IS REQUIRED ABSENT PROOF OF ONE OF THE SPECIFIED GROUNDS IN THE NEW YORK CONVENTION TO SET ASIDE AN AWARD

The New York Convention's "basic thrust was to liberalize procedures for enforcing foreign arbitral awards," and it has a "general pro-enforcement bias."  *Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier*, 508 F.2d 969, 973 (2d Cir. 1974).  To obtain recognition and enforcement of a foreign arbitration award, a party need only provide authenticated or certified copies of the award and the underlying agreements to arbitrate.  *See* New York Convention, art. IV; 9 U.S.C. §§ 201, 207.  An affidavit from someone with "personal knowledge that the agreement and the award are genuine . . . is sufficient" for these purposes.  *Arbitration between Overseas Cosmos, Inc. & NR Vessel Corp.*, 97 Civ. 5898, 1997 WL 757041, at *5 (S.D.N.Y. Dec. 8, 1997).  LGC has submitted the necessary documents, and thus met its minimal burden to show that the award should be converted into a judgment.   (Leviev Aff. ¶ 2.)

When presented with an award that falls under the New York Convention, a District Court may decline to confirm it only if the respondents can show one of the circumstances "specified in the said Convention."  9 U.S.C. § 207.  "The party opposing enforcement has the

burden of proving the existence of one of the[] enumerated defenses." *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 313 (2d Cir. 1998).  The Convention's seven grounds for non-enforcement are:

- "incapacity" of a party;

- a party was "not given proper notice" of the proceeding "or was otherwise unable to present his case";

- the award addresses "matters beyond the scope of the submission to arbitration";

- the arbitral panel or procedure was "not in accordance with the agreement of the parties";

- the award has "not yet become binding" or was "set aside or suspended";

- the matter is "not capable of settlement by arbitration" in the country where enforcement is sought; or

- recognition would violate the "public policy" of the country in which enforcement is sought.

*See* New York Convention, art. V.

These seven grounds for avoiding confirmation are the "only grounds available for setting aside" the award, *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 19-20 (2d Cir. 1997), and the "party opposing enforcement has the burden of proving" them. *Europcar*, 156 F.3d at 313.

Importantly, none of the enumerated grounds under the New York Convention allows a court to examine the merits of the case.  *China Nat. Metal Products Imp./Exp. Co. v. Apex Digital, Inc.*, 379 F.3d 796, 799 (9th Cir. 2004) ("Rather than review the merits of the underlying arbitration, we review . . . only whether the party established a defense under the Convention.");

- 13 -

*Int'l Standard Elec. Corp. v. Bridas Sociedad Anonima Petrolera, Indus. Y Comercial*, 745 F.
Supp. 172, 178 (S.D.N.Y. 1990) (the "animating principle" of the New York Convention was
that "the Courts should review arbitrations for procedural regularity but resist inquiry into the
substantive merits of awards"); *see also* A. van den Berg, The New York Arbitration Convention
of 1958 265 (Kluwer 1981) ("A further main feature of the grounds for refusal is that *no review
of the merits* of the arbitral award is allowed.") (emphasis in original).

III.     **THE KLEINS CANNOT PROVE ANY GROUND TO SET ASIDE THE AWARD**

        The Kleins cannot meet their burden to show that any of the above seven grounds is
applicable here.  During the late stages of the arbitration, the Kleins suggested that there would
be various grounds to set aside the award, but, as discussed below, they are incorrect.

        A.      **THE AWARD FALLS WITHIN THE BROAD SCOPE OF THE ARBITRATION CLAUSES**

        The Kleins have suggested they will argue that the arbitrators exceeded the scope of their
authority in making their award.  (Ex. 43 at 2-9, 16-25.)  For example, they have argued that
ordering a buyout of KLG and Sunrise would exceed the arbitrators' powers because to do so
would "rewrite[]" the parties' contracts, which they read to allow for a buyout only of JKD.  (Ex.
43 at 8; *see also* Ex. 42 at 4-10 (LGC brief on the issue).)  To succeed in establishing this
defense, the Kleins would have to prove that the arbitrators addressed a "subject matter not
within the agreement to submit to arbitration" and "overcome [the] powerful presumption that
the arbitral body acted within its powers."  *Parsons*, 508 F.2d at 976.

        The Kleins cannot meet this burden because the contracts establishing the joint ventures
between LGC and the Kleins contain broad arbitration clauses covering "[a]ny controversy or
claim arising out of or relating to" their agreements.  (Ex. 2 § 8.8; Ex. 5 § 11.11; Ex. 10 § 11.14.)
The issues the arbitrators addressed, which all relate to the joint ventures, are well within the
arbitrators' authority under these agreements.  For example, the question of whether the buyout

rights extend only to JKD (as the Kleins argued), or include KLG and Sunrise as well (as the

panel concluded) is quite plainly a question "arising out of or relating to" the contracts

establishing and governing the joint ventures.  The panel was never asked to address, and did not

address, any matters outside the joint ventures.

Courts routinely reject attempts to shoehorn disputes over the merits into arguments

about the scope of the arbitrators' powers, as the Kleins threaten to do here.  In the Second

Circuit's ruling in *Parsons*, for example, the respondent challenged "$185,000 awarded for loss

of production" based on a "provision of the contract reciting that 'neither party shall have any

liability for loss of production.'"  508 F.2d at 976.  The court concluded that the arbitration panel

was free to "interpret[] the provision not to preclude" the award, and refused respondents'

attempt to characterize the argument as being about the scope of the arbitrators' powers.  *Id*. at

976-77.  Other courts agree.  *See Thai-Lao Lignite (Thailand) Co. v. Gov't of the Lao People's*

*Democratic Republic*, No. 10 Civ. 5256, 2011 WL 3516154, at *17 (S.D.N.Y. Aug. 3, 2011),

*aff'd*, 492 F. App'x 150 (2d Cir. 2012) ("Although Respondent has attempted to characterize its

objections as jurisdictional arguments, they are in fact based on its disagreement with the Panel's

interpretation of the [contract] and the Panel's calculation of damages thereunder."); *Telenor*

*Mobile Commc'ns AS v. Storm LLC*, 524 F. Supp. 2d 332, 359 (S.D.N.Y. 2007), *aff'd*, 584 F.3d

396 (2d Cir. 2009) ("If the arbitration clause does not include any limit on the arbitrators' powers

to craft a remedy, a respondent must 'overcome a powerful presumption that the arbitral body

acted within its powers.'").  The Kleins cannot show that the arbitrators exceeded their powers.

### B.   MR. BRONNER'S UNRELATED BELGIAN CASE CANNOT JUSTIFY DENYING ENFORCEMENT

The Kleins may also argue against enforcing LGC's award because they learned that Mr.

Bronner, along with approximately 100 other defendants, was found to have avoided taxes in

Belgium, which resulted in a criminal conviction.  (Ex. 48.)  That proceeding has no connection

to this arbitration, the Kleins, or LGC, and is not grounds to set aside LGC's award.

First, this issue is not one of the seven exclusive defenses to enforcement of an award

under the New York Convention.  Because this Court is bound to apply only the seven

enumerated grounds under the New York Convention to deny LGC's award, Mr. Bronner's

unrelated legal issues cannot justify a denial.  *Yusuf*, 126 F.3d at 19.

Even in cases not subject to the New York Convention, courts have repeatedly rejected

attempts to set aside awards based on arbitrators' undisclosed criminal convictions, absent any

showing the conviction affected the award or was connected in some way to the arbitration.  *See*

*United Transp. Union v. Gateway W. Ry. Co*., 284 F.3d 710, 712-13 (7th Cir. 2002);

*Knickerbocker Textile Corp. v. Leifer Mfg. Corp*., 278 A.D. 351, 352 (1st Dep't 1951); *see also*

*Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 646 (9th Cir. 2010)

(non-prosecution agreement requiring judge to retire).

The reasoning of these courts is persuasive.  "There is no statutory requirement of

previous good character for an arbitrator," *Knickerbocker*, 278 A.D. at 352, and, if a party is

concerned about prior criminal problems, it is always "free to seek that information" on its own

or to request a disclosure on the subject.  *Lagstein*, 607 F.33d at 646.

In addition, as Judge Posner explained in *United Transportation*, a "judge's decisions are

not voidable on the basis of an undisclosed criminal conviction, even in a capital case, if the

conviction had no impact on the decision," and there is no reason "why a stricter rule should

apply in arbitration, especially since the standard due process entitlement to an impartial tribunal

is relaxed" in arbitration.  284 F.3d at 712 (internal citations omitted).  A "contrary rule would

encourage losing parties to an arbitration to conduct a background check on the arbitrators,

looking for dirt," which is "a particularly questionable undertaking because arbitrators, unlike judges, are not subjected to background checks when appointed." *Id*. at 712-13.[4]

The Kleins have no evidence that Mr. Bronner's conviction had any impact on LGC's award, and the mere fact of the conviction is no defense to enforcement.

### C.   THE ALLEGED PARTIALITY OF THE ARBITRATORS CANNOT JUSTIFY DENYING ENFORCEMENT

The Kleins also have asserted that the arbitration panel is partial to LGC.  (Ex. 39.)  As a threshold matter, the Court need not consider the merits of any partiality argument, because the Kleins have waived it.  As the Second Circuit has explained:  "Where a party has knowledge of facts possibly indicating bias or partiality on the part of an arbitrator he cannot remain silent and later object to the award of the arbitrators on that ground."  *See AAOT Foreign Econ. Ass'n (VO) Technostroyexport v. Int'l Dev. & Trade Servs., Inc*., 139 F.3d 980, 982 (2d Cir. 1998).

Here, the Kleins have argued the arbitrators are partial because they have supposedly uncovered a vaguely defined business relationship between LGC's chosen arbitrator, Mr. Zahavi, and the neutral arbitrator, Mr. Bronner.  (Ex. 39.)  But the Kleins knew of this relationship before the arbitration and still proceeded.  Mr. Bronner completed a disclosure to the Kleins and LGC in September 2013 in which he indicated that he did business with Mr. Zahavi (and disclosed, as well, that he did business with the arbitrator chosen by the Kleins).  (Ex. 20.)  The Kleins could

---

[4] The Kleins appear to rely heavily upon *Velez Organization v. J.C. Contracting Corp*., 289 A.D.2d 105 (1st Dep't 2001) which, in a conclusory order, overturned an arbitration award based on the arbitrator's undisclosed conviction.  (Ex. 48.)  But *Velez* was decided under the CPLR, which cannot trump the federal standards under the New York Convention. *Yusuf*, 126 F.3d at 20 (confirmation standards "in conflict" with New York Convention are "precluded"); *C.T. Shipping, Ltd. v. DMI (U.S.A.) Ltd*., 774 F. Supp. 146, 148-49 (S.D.N.Y. 1991) (concluding that "CPLR 7511 is inapplicable" because federal law "preempts state statutes purporting to create alternative grounds for confirming or vacating arbitration awards").  The Court need not follow *Velez* and should instead follow the better reasoned federal cases discussed above.

have inquired further before submitting to arbitration, but they chose not to.  Instead, they

proceeded to arbitrate and, tellingly, began to claim partiality only after the arbitrators ruled that

LGC was entitled to a minimum of $102 million and settlement talks thereafter failed.  Whatever

complaints the Kleins now have about the Zahavi-Bronner relationship were knowable to them

before that adverse ruling and are waived.

   Even if the Kleins had not waived any partiality objection, they would still be unable to

establish a defense to enforcement.  Partiality arguments fall within the "public policy" ground to

vacate an arbitration award, *see Transmarine Seaways Corp. of Monrovia v. Marc Rich & Co. A.*

*G.*, 480 F. Supp. 352, 357 (S.D.N.Y. 1979), and that ground is "construed narrowly" and is

triggered "only where enforcement would violate [the] 'most basic notions of morality and

justice.'"  *Waterside Ocean Nav. Co. v. Int'l Nav. Ltd.*, 737 F.2d 150, 152 (2d Cir. 1984).

   To prevail on this ground, a respondent must show more than the appearance of

partiality; there must be proof that the arbitrators have "not acted in an impartial matter."  A. van

den Berg, The New York Arbitration Convention of 1958 378 (Kluwer 1981).  This proof

generally involves hidden direct financial or professional relationships between an arbitrator and

a party, not business dealings between arbitrators.  *See Transmarine*, 480 F. Supp. at 357

(describing a line of cases that "all deal with direct financial or professional relationships

between an arbitrator and a party").  LGC has been unable to find any case in which a

relationship between arbitrators was sufficient.

   Importantly, in this case, the parties opted for arbitrators that are connected to and

involved with the diamond industry.  Courts examining arbitration awards under these

circumstances have recognized that, because there are few people qualified to arbitrate disputes

in specialized industries, the mere existence of professional relationships does not prove

partiality.  For example, in *Brandeis Intsel v. Calabrian*, 656 F. Supp. 160 (S.D.N.Y. 1987), the

arbitrators were all members of the London Metal Exchange who knew each other commercially,

sometimes dealt with each other, and sometimes competed against each other.  The court found

that, because the parties wanted the expertise of members of this specific business community,

there was no appearance of bias simply because the arbitrators had crossed paths.  *Id.* at 168-69.

The same is true here:  that Mr. Zahavi and Mr. Bronner have a business relationship, one that

the Kleins knew about and declined to investigate further, does nothing to justify denying

enforcement of LGC's award.[5]

CONCLUSION

For the stated reasons, the Court should confirm the arbitral award and enter judgment in

favor of LGC.

Date:  New York, New York
       June 30, 2016

STEPTOE & JOHNSON LLP

By: _____
        Charles Michael
        1114 Avenue of the Americas
        New York, New York 10036
        (212) 506-3900
        cmichael@steptoe.com

        *Counsel for petitioner*
        *LGC USA Holdings, Inc.*

---

[5] To the extent the Kleins also raise partiality arguments because of supposedly undisclosed ties between Mr. Zahavi and Mr. Leviev, those arguments are waived, as a New York state court has already found.  (Ex. 36.)